UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Byran Kempa,

    Plaintiff,

v.                                              Case No.: 10-11696

Cadlerock Joint Ventures, L.P.,          Honorable Sean F. Cox

    Defendant.

_____/

## OPINION & ORDER

On April 27, 2010, Plaintiff Byran Kempa ("Kempa") brought this action against Defendant CadleRock Joint Ventures, L.P. ("CadleRock"). Currently before the Court are cross-motions for summary judgment, addressing Count I, the only remaining count in this action, which alleges 3 separate and distinct violations of the Fair Debt Collection Practices Act ("FDCPA"). The parties have briefed the issues, and the Court heard oral argument on January 27, 2011. For the following reasons, the Court shall grant these motions in part and deny them in part.

The Court shall grant summary judgment in favor of Defendant with respect to Plaintiff's alleged second and third violations of the FDCPA (i.e., his 15 § U.S.C. 1692e claim and his 15 § U.S.C. 1692g claim).

The Court shall grant summary judgment, as to liability, in favor of Plaintiff with respect to Plaintiff's first alleged violation of the FDCPA (i.e., his 15 § U.S.C. 1692c(b) claim). The Court shall order supplemental briefing on damages, costs, and attorney fees.

BACKGROUND

**A.     Factual Background**

Kempa secured a second mortgage loan on his home on November 10, 2006. (Def's Resp., Doc. Entry No. 26 at 1). By the summer of 2007, Kempa defaulted on his loan and the holder of his first mortgage foreclosed upon Kempa's home. *Id*. After a number of transfers, CadleRock became the owner of the second mortgage loan. *Id*. at 2.

On November 18, 2008, CadleRock opened a file regarding collection of Kempa's debt and identified Kempa's current address (the "Parmenter address"). *Id*. CadleRock obtained Kempa's address through an online report from a company called Accurint. (Plf's Reply, Doc. Entry No. 33 at 8). On December 4, 2008, Maria Hunt ("Hunt"), an employee of Cadlrock assigned to Kempa's account, sent two letters for Kempa to the Parmenter address. (Def's Resp. at 2). Kempa did not respond to either letter and Kempa testified that he did not receive the letters. *Id*.

CadleRock also obtained Kempa's telephone number (the "6090 number"). *Id*. Between January 13, 2009 through April 10, 2010, CadleRock called the 6090 number 19 times, leaving messages each time. (Plf's Reply at 8, Ex. 3). Kempa did not respond to any of the messages. (Def's Resp. at 2). There were a couple of instances in which Hunt was able to speak to Kempa, but during those conversation, Kempa denied his identity and denied knowing a Byran Kempa.

CadleRock also obtained an additional telephone number for Kempa's file. This number was Kempa's parents' (Greg and Maura Kempa) telephone number (the "7855 number"). *Id*. at 3. According to CadleRock, Hunt contacted Greg and Maura Kempa via the 7855 number on five separate occasions, leaving four messages and speaking with Maura Kempa once on

October 31, 2009. *Id.* at 4.  During that conversation, CadleRock's call log indicates that Maura Kempa told Hunt that Byran Kempa does not live at the location of that telephone number and would not identify her relationship with Byran Kempa. *Id*.  It appears from the parties' briefs and exhibits that at least 2 of the five calls to the 7855 number occurred after Hunt's October 31, 2009 conversation with Maura Kempa.

The parties do not agree on the dates of all the telephone calls.  CadleRock admits to making five calls to Kempa's parents and identified five calls in a call log for the 7855 number. (Def's Resp., Ex. F).  Both parties agree Greg Kempa called CadleRock on April 21, 2010 from the 7855 number and told Hunt that Bryan Kempa did not live at the location of that number, and that she was calling the wrong number.  (Plf's Reply at 4).

**B.      Procedural Background**

Kempa filed his complaint on April 27, 2010, alleging two counts: (1) Violation of the Fair Debt Collection Practices Act ("FDCPA"), and; (2) Violation of the Michigan Collection Practices Act (*Complaint*, Doc. Entry No. 1).  CadleRock filed its answer on May 20, 2010 (Doc. Entry No. 4).  Kempa filed a Motion for Summary Judgment on October 20, 2010 (Plf's Mtn. for S.J., Doc. Entry No. 11).  On November 8, 2010, Cadlerock filed its combined Response to Kempa's Motion for Summary judgment and its Cross-Motion for Summary Judgment (Def's Resp., Doc. Entry. No. 28).  On November 22, 2010, Kempa filed his combined Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment and Response to Defendant's Cross Motion for Summary Judgment (Plf's Reply, Doc. Entry No. 33).

On December 16, 2010 the parties stipulated and agreed to dismiss Kempa's Michigan Collection Practices Act claim (Count II).  (Doc. Entry No. 35).  Therefore, only Kempa's first

count, alleging violations of the FDCPA, remains.

## STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)). In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

Kempa alleges three separate violations of the FDCPA in his complaint. First, Kempa alleges that CadleRock violated 15 U.S.C. § 1692c by communicating with his parents after already obtaining Kempa's home address. (*Complaint* at ¶12a). Second, Kempa alleges that CadleRock violated 15 U.S.C. § 1692e "by failing to communicate in each contact and message left for [Kempa], that the contact was from a debt collector." (*Complaint* at ¶12b). Third, Kempa alleges that CadleRock violated 15 U.S.C. § 1692g "by failing to send [Kempa] a

validation notice within five days of its initial communication." (*Complaint* at ¶12c). In his reply brief, however, Kempa concedes that CadleRock sent Kempa a validation notice. (Plf's Reply at 5). Kempa is no longer pursuing that claim.

In order for the FDCPA to apply to CadleRock, CadleRock must be a "debt collector" pursuant to 15 U.S.C. § 1962(a)(6). CadleRock admits in its answers to Kempa's first set of interrogatories that it is a debt collector under the FDCPA. (Def's Ans. to Interrogs., Doc. Entry 11, Ex. 1 at ¶2).

**A.      Kempa's 15 U.S.C. § 1692c(b) claim.**

First, Kempa argues that CadleRock violated the FDCPA by communicating with a third party in connection with a debt. Section 1692c(b) provides:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).

Kempa's parents constitute third parties under this statute. CadleRock also admits that it contacted Greg and Maura Kempa five times in connection with Byran Kempa's debt. (Def's Resp. at 4). CadleRock admits to leaving four messages for Greg and Maura Kempa and actually speaking to Maura Kempa once. *Id.* Kempa, however, identifies only four occasions in which Hunt contacted Kempa's parents. Nonetheless, the FDCPA is a strict liability statute, and "proof of one violation is sufficient to support summary judgment for plaintiff." *Stojanovski v.*

*Strobl and Manoogian, P.C.*, 783 F.Supp. 319, 323 (E.D. Mich. 1992)(Gadola, J.). Therefore, the number of times Hunt contacted Greg and Maura Kempa is irrelevant.

Although it does not deny contacting Greg and Maura Kempa, CadleRock argues that its actions fall within two exceptions to § 1692c(b). The first exception to § 1692c(b) is the "location information" exception, pursuant to 15 U.S.C. § 1692b(3). The second exception to § 1692c(b) is the "bona fide error" exception, pursuant to 15 U.S.C. § 1692k(c).

    1.    <u>CadleRock's Location Information Defense</u>

CadleRock claims that its contacts with Greg and Maura Kemp were appropriate because the calls were made to confirm or correct the location information of Byran Kempa. (Def's Resp. at 9). CadleRock explains that this type of conduct is permitted pursuant to § 1692b of the FDCPA, which provides:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall–
>
>     \* \* \*
>
> (1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;
>
> (2) not state that such consumer owes any debt;
>
> (3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information.

15 U.S.C. § 1692b. The FDCPA defines the term "location information" as "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7).

CadleRock admits that it had an address (the Parmenter address) and a telephone number

6

(the 6090 number) for Byran Kempa as of November 2008. (Def's Resp. at 7). CadleRock, however, argues that because Byran Kempa had been unresponsive to all of CadleRock's letters and messages, Kempa's contact information was unconfirmed. As further proof that Kempa's location information was unconfirmed, CadleRock points to the deposition of Byran Kempa, in which he admits to lying to Hunt about his identity when Hunt actually made contact with him. (Def's Resp., Ex. B at 10). Byran Kempa also testified that his parents gave erroneous information to Hunt when Hunt contacted them at the 7855 number. *Id.* at 39. Additionally, Kempa testified that he told his parents not to divulge information to anyone inquiring about how to reach him. *Id*. at 25.

Kempa, however, alleges that his location information was confirmed by CadleRock's standard validation procedures. In her deposition testimony, Hunt states that, generally, if she sends two letters to a debtor and neither are returned by the post office because of a bad address, and the Accurint report reflects the same address, then that address is considered verified. (Plf's Reply, Ex. 3 at 25-26). Kempa also argues that CadleRock had a confirmed telephone number because CadleRock had Kempa's telephone number on file since November 2008 and Hunt made 19 telephone calls to the 6090 number, leaving many messages. In response to whether she had any reason to believe that the 6090 number was not Kempa's phone number as of January 13, 2009, Hunt stated, "No, I had no reason to believe it was not." *Id*. at 41. Hunt also testified that she knew that the 7855 number was listed to a Greg Kempa and not Byran Kempa. *Id*. at 56. Furthermore, Hunt described the message she likely left at the 7855 number on September 14, 2009. *Id*. at *46*. Hunt stated, "The message I would have left would have been, 'This call is for Byran Kempa. This is Maria at CadleRock Joint Venture. Please give me a

call." *Id.*

Both parties have provided evidence to support their positions on the five communications made between Hunt and Kempa's parents. While there may be a genuine issue of material fact as to whether Hunt called Greg and Maura Kempa in order to confirm location information regarding Byran Kempa, Hunt's first messages did not follow the requirements of § 1692b(1). As stated above, Hunt's message on the 7855 number was, "This call is for Byran Kempa. This is Maria at CadleRock Joint Venture. Please give me a call." *Id.* Section 1692b(1) clearly states that the debt collector must "state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer." 15 U.S.C. § 1692b(1). CadleRock has not provided any evidence to show that, in any of her messages or communications to Kempa's parents, Hunt stated that she was confirming or correcting Kempa's location information. Kempa has provided evidence that her communications did not include this information. (Plf's Reply at 5). Furthermore, Hunt admitted in her deposition that her messages and communications to Kempa's parents included the name of her employer. These statements, coupled with the fact that Hunt knew the location of the 7855 number was not Kempa's abode (Plf's Reply, Ex. 3 at 56, 65) are violations of § 1692b(1) because Hunt is only permitted to name her employer if expressly requested by the third party. Any other subsequent, deceitful statements by Greg and Maura Kempa to Hunt do mitigate Hunt's procedureial violations of § 1692b(1). Since the FDCPA is a strict liability act, Kempa is entitled to summary judgment with regards to Kempa's 15 U.S.C. § 1692c(b) claim.

       2.     <u>CadleRock's Bona Fide Error Defense</u>

Alternatively, CadleRock claims it should not be held liable for its contacts with

Kempa's parents because Hunt's conduct constituted a bona fide error, under 15 U.S.C. § 1692k(c). (Def's Resp. at 14). Section 1692k(c) provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15. U.S.C. § 1692k(c).

In its response to Kempa's Motion for Summary Judgment, CadleRock merely asserts that Hunt thought she was permitted to contact Kempa's parents because Hunt had a reasonable belief that CadleRock had an incorrect address or telephone number. As noted above, even if Hunt's belief was reasonable, it does not excuse her failure to follow the procedures provided by § 1692b(1).

Additionally, CadleRock asserts, in reference to § 1692k(c), that Hunt never intended to violate the FDCPA. CadleRock, citing *Lewis v. ACB Bus. Svs.*, 135 F.3d 389 (6th Cir. 1998), argues that the "debt collector must only show that the violation was unintentional, not that the communication itself was unintentional." In *Lewis*, the plaintiff alleged a violation of the FDCPA after the defendant contacted the plaintiff despite plaintiff's request that the defendant cease contacting him. *Lewis*, 135 F.3d at 401. The court found that the bona fide error exception applied because defendant accidentally called plaintiff thinking that plaintiff's account was new, and defendant had a computer system reasonably adapted to prevent those types of errors. *Id.*

Unlike in *Lewis*, however, Hunt's violation was not an accident. Rather, Hunt believed that she had the right to call Kempa (Plf's Reply, Ex. 3 at 48) and appears to leave the same

message numerous times (Plf's Reply, Ex. 3 at 47).  Instead, Hunt's mistake was a mistake of law.  Kempa correctly argues that a mistake of law is not a bona fide error.  (Plf's Reply at 20). Recently, in *Jerman v. Carlisle*, et al., 130 S. Ct. 1605 (2010), the Supreme Court stated, "Our law is therefore no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law." *Id*. at 1612.  The Court held, "the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute." *Id*. at 1624.

CadleRock does not admit to making any clerical mistakes.  CadleRock also fails to provide evidence that Hunt was aware of the FDCPA procedures for contacting third parties or that she mistakenly failed to follow the § 1692k(c) procedures.  CadleRock does not provide any evidence that Hunt's mistake was anything other than a mistake of law.  The bona fide error defense is not available to CadleRock, pursuant to *Jerman*.

**B.     Kempa's 15 U.S.C. § 1692e claim.**

In his complaint, Kempa also alleges CadleRock violated of 15 U.S.C. § 1692e "by failing to communicate in each contact and message left for the plaintiff, that the contact was from a debt collector." (*Complaint* at ¶ 12b).  Kempa, however, fails to address this claim in either of his briefs.

CadleRock provided evidence that Kempa failed to answer the majority of the phone calls, and when he did, he denied his identity.  Because the FDCPA prohibits debt collectors from mentioning any debt to third parties, CadleRock was forced to conceal its identity as a debt collector in its messages and communications with Kempa.  (Def's Resp. At 18).  Therefore,

10

CadleRock is entitled to summary judgment on Kempa's § 1692e claim.

**C.     Kempa is Entitled to Damages.**

The FDCPA is a strict liability statute and therefore Kempa is entitled to damages for CadleRock's violations of 15 U.S.C. § 1692c(b).  Section 1692k(a) provides:

> (a) Amount of damages
>
> Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
>
>> (1) any actual damage sustained by such person as a result of such failure;
>>
>> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000
>>
>> ***
>>
>> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 U.S.C. § 1692k(a).  In determining the amount of a defendant's liability for violations of the FDCPA, the Court shall consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  15 U.S.C. § 1692k(b)(1).

### CONCLUSION & ORDER

For the reasons discussed above, **IT IS ORDERED** that the cross-motions for summary judgment (Doc. Entry Nos. 11 and 28) are **GRANTED IN PART AND DENIED IN PART**.

The Court **GRANTS** Plaintiff's motion for summary with respect to his first alleged

violation of the FDCPA (i.e., his 15 § U.S.C. 1692c(b) claim). The Court **ORDERS** Plaintiff to file supplemental briefing as to damages, costs, and attorney fees **no later than March 16, 2011**. Defendant must file any response to Plaintiff's supplemental brief **no later than March 30, 2011.**

The Court **DENIES** Plaintiff's motion for summary judgment in all other respects.

The Court **GRANTS** Defendant's motion for summary judgement with respect to Plaintiffs second and third alleged violations of the FDCPA (i.e., his 15 § U.S.C. 1692e claim and his 15 § U.S.C. 1692g claim). The Court **DENIES** Defendant's motion for summary judgment in all other respects.

**IT IS FURTHER ORDERED** that Defendant's Objection to the Magistrate Judge's January 12, 2011 Order regarding Plaintiff's Motion to Compel is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Final Pretrial Conference set for March 21, 2011 is **ADJOURNED**.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 25, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 25, 2011, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager